UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NAMIKO YAMADA and MASATERU KAMEOKA,

                Plaintiff,

  -against-                                   **COMPLAINT**

TOKYO RESTAURANTS FACTORY, INC.,
TOKYO RESTAURANTS FACTORY             **JURY TRIAL DEMANDED**
INTERNATIONAL NY INC.,
HIDETAKA KASUGA and HITOSHI WATANABE,

                Defendants.
------------------------------------------------------------------------X

Plaintiffs Namiko Yamada and Masateru Kameoka ("Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of Defendants Tokyo Restaurants Factory, Inc., Tokyo Restaurants Factory International NY Inc., Hidetaka Kasuga, and Hitoshi Watanabe (collectively the "Defendants") allege:

## NATURE OF THE ACTION

1.  Tokyo Restaurants Factory Inc. is a restaurant group that manages over sixty restaurants in and outside of Japan, and has been recognized in the Michelin Guide 2020 for its successful New York Restaurants MIFUNE New York, sushi AMANE, and Toriko NY.

2.  Plaintiffs worked as servers at sushi AMANE, a nine-seat sushi bar concealed within MIFUNE's subterranean dining room, where Defendants established and imposed an unlawful tip pool that required members of the waitstaff to pay a substantial share of the tip pool to the head chef and sous chef.

3.  This action is brought to recover the misappropriated gratuities, unpaid overtime wages, liquidated damages, as well as damages related to the retaliatory

termination of Plaintiff Kameoka's employment pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL").

## JURISDICTION

4. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, as MIFUNE New York, sushi AMANE, and Toriko NY are located in the Southern District of New York.

## THE PARTIES

**Plaintiffs**

6. Masateru Kameoka resides in Montreal, Canada.

7. Kameoka was originally hired to work as a General Manager at Toriko restaurant from October 2019 through March 18, 2020. In March 2020, Toriko restaurant temporarily closed, and Kameoka was assigned to perform food deliveries for MIFUNE and sushi AMANE, while simultaneously managing Toriko's inventory and its e-mail accounts. In or around July 2021, Kameoka was assigned to work as a server at AMANE until his termination in October 2021.

8. Namiko Yamada resides in Queens, New York.

9. Yamada worked as a server at sushi AMANE from in or about March 31, 2018 to May 22, 2021.

10. While employed as delivery workers and servers, Plaintiffs spent more than 25% of their time performing physical labor.

**Defendants**

11. Defendants Tokyo Restaurants Factory, Inc. and Tokyo Restaurants Factory International NY Inc. have owned, or currently own and operate restaurants MIFUNE, sushi AMANE and Toriko (collectively the "Restaurants"). MIFUNE and sushi AMANE are located at 245 East 44th Street, New York, NY 10017-4337, and Toriko was formerly located at 76 Carmine Street, New York, NY 10014.

**Tokyo Restaurants Factory, Inc.**

12. Tokyo Restaurants Factory, Inc. is a corporation based in Tokyo, Japan, with headquarters at Murata Building, 2-22-7 Ohashi, Meguro-ku, Tokyo 153-0044.

13. Tokyo Restaurants Factory, Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

14. Tokyo Restaurants Factory, Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

15. Tokyo Restaurants Factory, Inc. has had an annual gross volume of sales in excess of $500,000 in each of the three years prior to the filing of this Complaint.

**Tokyo Restaurants Factory International NY Inc.**

16. Tokyo Restaurants Factory International NY Inc. is a New York corporation that maintains an office at 245 East 44th Street, New York, NY 10017.

17. Tokyo Restaurants Factory International NY Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

18. Tokyo Restaurants Factory International NY Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

19. Tokyo Restaurants Factory International NY Inc. has had an annual gross volume of sales in excess of $500,000 in each of the three years prior to the filing of this Complaint.

**Hitoshi Watanabe ("Watanabe")**

20. Defendant Hitoshi Watanabe ("Watanabe") is the owner and chief executive officer of Tokyo Restaurants Factory and Tokyo Restaurants Factory International NY Inc.

21. Watanabe exercises sufficient control over the Restaurants' operations to be considered Plaintiffs' employer under the FLSA and NYLL.

22. Watanabe has power over personnel decisions at the Restaurants, including the power to hire and fire employees, set wages, set employee schedules, and otherwise control the terms and conditions of employment at the restaurant.

23. The head chef at sushi AMANE informed Plaintiffs that all decisions regarding pay had to be approved by Watanabe.

24. Watanabe terminated Kameoka's employment and signed his Notice of Termination dated August 31, 2020.

**Hidetaka Kasuga**

25. Defendant Hidetaka Kasuga ("Kasuga") is the Chief Financial Officer of Tokyo Restaurants Factory and Tokyo Restaurants Factory International NY Inc.

26. Kasuga exercises sufficient control over the Restaurants' operations to be considered Plaintiffs' employer under the FLSA and NYLL.

27. Kasuga has power over personnel decisions at the Restaurants, including the power to hire and fire employees, set wages, and otherwise control the terms and conditions of employment at the restaurant.

28. Kasuga is responsible for human resources for all employees in New York, including Plaintiffs.

29. Kasuga corresponded directly with Kameoka regarding the negotiation of his wages, gratuities, and position at AMANE.

30. Kasuga signed Kameoka's Notice of Termination dated October 31, 2021.

## FACTUAL ALLEGATIONS

31. Kameoka initially worked as the general manager of Toriko restaurant starting October 16, 2019, and received a weekly salary of $1,153.85.

32. Toriko temporarily closed on March 18, 2020.

33. At the onset of the Covid-19 Pandemic, Defendants reassigned Kameoka to work from home and reduced his salary to $1,125.

34. Kameoka worked from home managing correspondence on behalf of Toriko from on or about March 18, 2020 through May 2020.

35. On or around May 23, 2020, sushi AMANE and MIFUNE started food delivery and pickup service, and Defendants assigned Kameoka to work at MIFUNE and sushi AMANE coordinating delivery orders from customers, assisting plating dishes at MIFUNE for delivery or pickup, and delivering orders to customers.

36. Sushi AMANE and MIFUNE opened for outdoor dining on or around July 6, 2020.

37. Starting on or around July 18, 2020, Kameoka was assigned to work as a server at sushi AMANE.

38. Once sushi AMANE and MIFUNE opened for outdoor dining, all cuisine for sushi AMANE was prepared indoors by Head Chef Shion Uino ("Shion") and assistant manager and sous chef Hiroto Ochiai ("Hiroto"), and all customers were seated in an outdoor dining area.

39. As a server, Kameoka worked approximately five days per week, from approximately 3:00 p.m. to between 11:00 p.m. and 12:00 a.m., for approximately 40 to 45 weekly hours. During this period, he also occasionally assisted MIFUNE's manager to coordinate customer deliveries and worked additional hours.

40. For example, for the workweek starting September 8, 2020, Kamoeka worked Tuesday, from 3:00 p.m. to 11:33 p.m., Wednesday from 3:00 p.m. to 11:14 p.m., Thursday from 3:00 p.m. to 11:37 p.m., Friday from 3:00 p.m. to 12:15 a.m. and Saturday from 2:00 p.m. to 12:51 a.m., for approximately 45 hours and 30 minutes.

41. Defendants paid Kameoka a weekly salary of $1,125 for his work as a server at sushi AMANE and delivery worker for MIFUNE.

42. As a result of paying Kameoka a weekly salary, Defendants failed to pay him an overtime wage of time and one-half his regular rate for all hours worked in excess of forty per week.

43. From March 2018 through October 2018, Yamada regularly worked three days per week, from 4:30 p.m. to the closing of the restaurant which ranged from 11:00 p.m. to 1:00 a.m., or later, for a total of approximately 19.5 to 25.5 hours per week.

44. From November 2018 through March 2020, Yamada regularly worked five or six days per week, from 4:30 p.m. to the closing of the restaurant which ranged from 11:00 p.m. to 1:00 a.m., or later, for a total of approximately 32.5 to 51 hours per week.

45. From July 2020 through May 2021, Yamada regularly worked five days per week, from 3:00 p.m. to between 11:00 p.m. and 12:00 a.m., for approximately 40 to 45 hours per week.

46. Upon her hire, Yamada was paid $18.00 per hour. On or around October 8, 2018, she received a raise to $21.00 per hour.

6

**Improper Tip Pool at sushi AMANE**

47. Although Shion and Hiroto did not interact with or provide any direct service to customers after sushi AMANE reopened in July 2020, they continued to receive customer gratuities from the tip pool.

48. From July 18, 2020 through in or around August 2020, Kameoka did not earn any percentage from the mandatory tip pool at sushi AMANE, while Shion received 63%, Hiroto received 25%, and Plaintiff Yamada, who worked as a server, received 12%.

49. Throughout their employments, Shion and Hiroto were employed as supervisory and managerial employees.

50. Head Chef Shion worked as a chef and manager. His duties included creating the sushi menu, managing food preparation including preparation of all types of sushi, supervising waitstaff and Hiroto, and monitoring food inventory and placing orders.

51. Sous Chef Hiroto Ochiai worked as a sous chef and assistant manager. His primary duties included assisting Shion preparing appetizers and other dishes, managing customer complaints, preparing beverages and sake, and managing and ordering inventory for sushi AMANE.

52. On or around August 4, 2020, Kameoka complained to Shinji Odahara, a supervisor for Toriko, sushi AMANE, and MIFUNE, about the tip pool distribution at sushi AMANE. Specifically, Kameoka complained that Shion and Hiroto should not receive any gratuities because they were managers and did not interact with customers. Odahara suggested that Kameoka speak directly with Shion regarding the tip distribution.

53. On August 5, 2020, Kameoka asked Shion about the tip distribution. Shion replied words to the effect of - "for the time being, myself, Hiroto, and Namiko are paid less on the premise that we will get tips and we cannot live without tips."

54. On August 12, 2020, Shion informed Kameoka that he would now receive 10% of the tip pool, and that Shion's daily share of the tip pool would be reduced from 63% to 53%. Shion told Kameoka that if he did not agree to the proposed tip pool distribution then he would find a server that would agree to work without gratuities.

55. Thereafter, the tip allocation at sushi AMANE was adjusted so that Kameoka received 10%, Shion received 53%, Hiroto received 25%, and Yamada received 12%.

56. In August 28, 2020, Shion informed Kameoka that headquarters in Tokyo had agreed to recompense Shion for the difference in his tip pool distribution now that Kameoka was receiving gratuities.

**Unlawful Retaliation Against Kameoka by Defendants**

57. On August 30, 2020, Odahara informed Kameoka that Toriko would close permanently, and that his employment would end on September 30, 2020.

58. Thereafter, and through October 2020, Odahara, Kameoka and Hidetaka Kasuga, engaged in several discussions via e-mail regarding structuring a severance package that would include continued employment at sushi AMANE for a set period.

59. During these discussions, Kameoka continued to work at sushi AMANE as a server.

60. As part of these discussions, by e-mail on October 6, 2020, Kameoka requested an increase in his tip allocation, and stated to Kasuga: "I have told Mr. Odawara, Mr. Shion, and Mr. Hiroto many times that Mr. Shion and Mr. Hiroto are not

in a position to receive tips at all in the first place. So all the tips they have received since the store opened are illegal and exploitation."

61. On October 6, 2020, Kasuga proposed to continue to employ Kameoka as a server at Amane at his current rate of $1,125, and increase his tip allocation from 10% to 25%.

62. On October 8, 2020, Kameoka replied and stated: "Shion and Hiroto can receive 0%" of the tip allocation.

63. On October 8, 2020, Kasuga replied and asked: "It is said that Shion and Ochiai are 0%, but when did Mr. Kameoka recognize the fraud? Is it Shion and Ochiai who were wrong? I will consider the severance pay again based on Mr. Kameoka's intention, so could you please tell me the amount you want?"

64. On October 9, 2020, Kameoka replied that "the desired amount is $158700.00."

65. On November 1, 2021, Kasuga sent Kameoka a termination notice stating that his employment ended on October 31, 2020. Specifically, Kasuga wrote: "Your position has been terminated with cause as a result of your conduct.  Your demand of $158,700 in exchange for your silence regarding the Company's alleged FLSA and NYLL violations constitutes a crime of attempted extortion."

66. Defendants terminated Kameoka after he provided a calculation of his lost wages and gratuities as a result of the improper tip pool practice at sushi AMANE which he reasonably and in good faith believed to be unlawful.

**Other Wage and Hour Violations**

67. Defendants failed to furnish Plaintiffs with wage notices upon hire or whenever their pay rate changed.

68. Throughout their employment, Defendants failed to pay Plaintiffs and other employees their wages within seven days of the end of the pay period.

69. Defendants' handbook that is distributed to all employees, including Plaintiffs, states, the following:

> For payroll purposes, the workweek for all employees begins at 12:01 a.m. on Monday and ends at 12:00 midnight the following Sunday. Paydays are two weeks later on every Thursday.

70. For example, Defendants paid Kameoka his wages for the pay period of July 13, 2020 through July 19, 2020, on July 30, 2020.

71. Defendants failed to furnish Plaintiffs with compliant wage statements with each payment of wages.

## FIRST CLAIM
### (FLSA – Misappropriation of Gratuities)

72. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

73. Section 3(m) of the FLSA, 29 U.S.C. § 203(m), as amended, prohibits employers, managers, and supervisors from keeping any portion of tips received by employees for any purpose.

74. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and employed Plaintiffs.

75. The provisions set forth in the FLSA, 29 U.S.C. § 216, and the supporting federal regulations, apply to Defendants.

76. Defendants imposed a tip pool on Plaintiffs that required them to share gratuities with employers, managers, and supervisors.

77. At all times relevant, Defendants demanded or accepted, directly or indirectly, or retained a portion of gratuities belonging to Plaintiffs.

78. By retaining gratuities intended for Plaintiffs, Defendants violated 29 U.S.C. § 203(m)(2)(B).

79. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

80. As a result of Defendants' willful violations of the FLSA, Plaintiffs suffered damages by being denied gratuities kept by Defendants in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in an amount equal to the unlawfully retained tips, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM**
**(FLSA – Unpaid Overtime)**

81. Plaintiff Kameoka repeats and realleges all forgoing paragraphs as if fully set forth herein.

82. Defendants were required to pay Plaintiff Kameoka one and one-half (1½) times his regular rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207, *et seq*.

83. Defendants failed to pay Plaintiff Kameoka the overtime wages to which he was entitled under the FLSA.

84. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff Kameoka overtime wages.

85. Due to Defendants' violations of the FLSA, Plaintiff Kameoka is entitled to recover his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CLAIM
### (NYLL – Unpaid Overtime)

86. Plaintiff Kameoka repeats and realleges all forgoing paragraphs as if fully set forth herein.

87. Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff Kameoka one and one half (1½) times his regular rate of pay for all hours Plaintiff worked in excess of forty per week.

88. Defendants failed to pay Plaintiff Kameoka the overtime wages to which he was entitled under the NYLL.

89. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff Kameoka overtime wages.

90. Due to Defendants' willful violations of the NYLL, Plaintiff Kameoka is entitled to recover unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## FOURTH CLAIM
### (NYLL – Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d)

91. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

92. NYLL § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity for an employee.

93. At all times relevant, Defendants demanded or accepted, directly or indirectly, or retained a portion of gratuities belonging to Plaintiffs.

94. At all times relevant, Defendants have been agents or officers of a corporation within the meaning of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor regulations.

95. By Defendants' knowing or intentional demand for, acceptance of, and/or retention of the gratuities paid by customers, Defendants have willfully violated NYLL, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

96. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid gratuities, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### (NYLL – Untimely Paid Wages)

97. Plaintiffs repeat every allegation of the preceding paragraphs as if fully set forth herein.

98. Defendants are employers within the meaning of NYLL § 190, 651(6) and supporting New York Statement Department of Labor Regulations and employed Plaintiffs.

99. Plaintiffs are "manual workers" within the meaning of NYLL § 190(4).

100. As manual workers, Defendants was required to pay Plaintiffs "not later than seven days after the end of the week in which the wages are earned." NYLL § 191(1)(a)(i).

101. Defendants did not pay them within seven days "after the end of the week in which the wages are earned," violating NYLL § 191(1)(a)(i).

102. Defendants did not timely pay Plaintiffs for the first seven days they worked within the 14-day pay period.

103. For violating NYLL § 191(1)(a)(i), Defendants are liable to Plaintiffs for liquidated damages, interest, and attorneys' fees and expenses.

## SIXTH CLAIM
### (NYLL – Wage Theft Prevention Act)

104. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

105. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

106. The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

107. Defendants paid Plaintiffs without providing a wage statement accurately listing: the regular rate, overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

108. In violation of NYLL § 191, Defendants failed to furnish to Plaintiffs at the time of hiring, whenever there was a change to Plaintiffs' rate of pay, and on or before February 1 of each year of employment, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

109. Defendants failed to furnish Plaintiffs with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

110. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

111. Due to Defendants' violation of NYLL § 195(3), Plaintiffs are entitled to recover from Defendants liquidated damages of $250 per day that the violation occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**SEVENTH CAUSE OF ACTION**
**(FLSA - Unlawful Retaliation)**

112. Plaintiff Kameoka repeats and realleges all foregoing paragraphs as if fully set forth herein.

113. Plaintiff Kameoka is an employee under 29 U.S.C. § 215(a)(3).

114. Defendants are employers under 29 U.S.C § 215(a)(3).

115. Plaintiff Kameoka's complaints about the improper tip pool at sushi AMANE constitute protected activity under the FLSA.

116. Defendants willfully terminated Plaintiff Kameoka's employment because of his complaints about the improper tip pool.

117. Defendants' termination of Plaintiff Kameoka's employment violated 29 U.S.C. § 215(a)(3).

118. Due to Defendants' violations of the FLSA, Plaintiff Kameoka is entitled to recover from Defendants compensatory damages, punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### (NYLL – Unlawful Retaliation)

119. Plaintiff Kameoka repeats and realleges all foregoing paragraphs as if fully set forth herein.

120. Plaintiff Kameoka is an employee under NYLL § 215.

121. Defendants are employers under NYLL § 215.

122. Plaintiff Kameoka's complaints about the improper tip pool at sushi AMANE constitute protected activity under the NYLL.

123. Defendants terminated Plaintiff Kameoka's employment in retaliation for his complaints about the improper tip pool.

124. Defendants' termination of Plaintiff Kameoka's employment violated NYLL § 215.

125. Due to Defendants' violations of the FLSA, Plaintiff Kameoka is entitled to recover from Defendants compensatory damages, punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

 a. declaring that Defendants have violated the tip misappropriation and overtime wage provisions of the FLSA and the NYLL;

 b. declaring that Defendants violated the wage notice and statement provisions of the NYLL and WTPA;

 c. declaring that Defendants violated the frequency of pay provisions of the NYLL;

 d. declaring that Defendants' violations of the FLSA and NYLL were willful;

 e. enjoining future violations of the FLSA and NYLL;

 f. awarding Plaintiff Kameoka unpaid overtime wages;

 g. awarding Plaintiff Kameoka compensatory and punitive damages as a result of his retaliatory termination;

 h. awarding Plaintiffs unpaid gratuities;

 i. awarding Plaintiffs liquidated damages for untimely wage payments;

 j. awarding Plaintiffs liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and to the NYLL;

 k. awarding Plaintiffs liquidated damages as a result of Defendants' failure to furnish accurate wage statements and annual notices pursuant to the NYLL;

 l. awarding Plaintiffs pre- and post-judgment interest under the NYLL;

 m. awarding Plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

n. awarding such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Dated: New York, New York
July 28, 2022

        PECHMAN LAW GROUP PLLC

        By: *s/Louis Pechman*
            Louis Pechman
            Vivianna Morales
            488 Madison Avenue, 17th Floor
            New York, New York 10022
            (212) 583-9500
            pechman@pechmanlaw.com
            morales@pechmanlaw.com
            *Attorneys for Plaintiffs*